## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

**C. & J. CAMP, Inc., Clarence Camp II, Margaret Hocker Camp Lane, as the executrix of the Estate of Henry N. Camp, D. B. Kibler, Jr., D. B. Kibler III, in a joint enterprise d/b/a Kibler-Camp Phosphate Enterprise, Respondents.**

### No. 15064.

United States Court of Appeals
Fifth Circuit.

Oct. 29, 1954.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel N.L. R.B., A. Norman Somers, Asst. Gen. Counsel N.L.R.B., Ruth V. Reel, Arnold Ordman, Attorneys N.L.R.B., Washington, D. C., for petitioner.

E. Snow Martin, Lakeland, Fla., William F. Howe, Jerome Powell, Washington, D. C., Bryant & Martin, Lakeland, Fla., Gall Lane & Howe, Washington, D. C., Gall, Lane and Howe, Washington, D. C., for respondents.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

Having found that respondents[1] violated: Section 8(a) (1) of the Act, 29 U.S.C.A. § 151 et seq., by interfering with, restraining, and coercing employees in the exercise of their rights guaranteed by Sec. 7; Sec. 8(a) (3) and (1) by discharging employee Norman Savary because of his leadership in organizing the International Union of Operating Engineers; and Sec. 8(a) (5) and (1) by refusing to bargain with the certified representative of their employees; and having entered its decision and order[2] in accordance with its findings; the Board by petition to this court sought enforcement of its order.

The respondents by their answer joined issue with the Board and, denying the correctness of its findings and the validity of its order, put both to the test.

Thereafter both board and respondents by briefs and oral argument urged upon the court their respective contentions and views as to the findings and record, and the matters in controversy are before us for decision. The board insists that each and every finding on which it relies finds full support in the record considered as a whole. The respondents on their part urge upon us that all the findings, and especially all those having to do with the discharge of the employee Savary, are based not upon substantial and credible evidence but upon suspicion and conjecture and upon testimony which is without probative force because incredible on its face or wholly discredited.

As to the charges and findings that they violated the act by prohibited surveillance and interrogation of their employees in an attempt to prevent their successful unionization, respondents urge upon us that there is no evidence of threats, coercion or promises of reward and nothing that was done by them which went beyond their right of free

1. Who are engaged in the mining of phosphates in Florida and their distribution in Florida and in other states.

2. Reported at 107 N.L.R.B. No. 226.

speech under the Constitution and the Act.

As to the charges that they refused to bargain with the union, respondents do not deny that they granted a unilateral wage increase without first consulting the union or that they did insist, as a condition to meeting with the union for bargaining, that the union agree in advance of the meeting that the demand it had already made would be to some extent abated or lessened. As to the unilateral wage increase, they put forward neither explanation nor excuse, while as to the conditions laid down for bargaining, they confess and avoid by urging that their demand upon the union was only a technical violation of their duty to bargain and meant no more than to state that the union's first demands must be modified if an agreement was to be reached.

Indeed, so concerned are they with their defense to the charge that Savary was discriminatorily discharged in violation of the act, so intent are they upon overthrowing the findings and defeating the order as to Savary, that it might almost be said that their defense against the other charges is half-hearted, their confidence in their position with respect to them none too strong.

■ However this may be, we find ourselves, after an examination of the record and the appendices of board and respondents, in no doubt that these charges were supported by the evidence adduced.

We turn then to the Savary matter as to which the respondents vigorously contest, not only the ultimate findings but each of the subsidiary findings on which they purport to rest.

Here respondents pitch their attack upon the findings on two main grounds. The first is that the evidence affirmatively and undisputedly shows that Savary's discharge was a discharge for cause and as such specifically protected by the act from retaliatory action by union and board. In support of this they point to the testimony of Farrell, that it was because of Savary's unsatisfactory service that he was discharged and then only after an accumulation of disservices which, as long suffering employers, respondents had put up with and suffered out of sympathy for Savary's family, and they insist that the fact that the discharge came at the time it did with respect to Savary's union activity was a mere happen so.

Their second ground of attack upon the findings, based as it is upon the unsatisfactory nature of the accredited testimony upon which the examiner relies to furnish the basis for the inference of anti-union motive, amounts to a flat challenge of the relied on testimony as unworthy of belief because of its nature and because it is contradicted by the positive testimony of respondents' witnesses and to some extent by Savary's admissions.

We are well aware of the provisions of the act adding the affirmative protection of the statute to that uniformly accorded by this court to discharges for cause,[3] and in a case to which the statute is applicable, we would be the last to deny that protection.

On the other hand, it is, and always has been, clear both before and after the amendment that a discharge ostensibly for cause must, in order to be protected as such, be in reality a discharge for cause, and that a trumped up or synthetic discharge for cause may not be used by the employer as a shield and buckler to protect him against a discharge, the real, the dominant motive of, the moving cause for, which is anti-union discrimination.

■ A careful examination of the record as a whole in the light of these views convinces us not merely that the record, considered as a whole, supports the finding, but that it does so not barely and by the hardest, but easily and in full measure.

---

3. National Labor Relations Board v. Tex-O-Kan Mills, 5 Cir., 122 F.2d 433, 434.

■ Finally, we are of the opinion, contrary to the respondents' repeated strictures upon the findings and upon the attitude and actions of the examiner, that instead of a slavish following by him of the union line and a consequent unconsidered and wholesale rejection of testimony favorable to the respondents, the examiner's intermediate report shows an impartial approach to, and an apperceptive and understanding appreciation of the evidence and its effect, not only in its separate parts but as a whole, which tends, indeed serves, to accredit the report, the results it reaches, and the recommendations it makes.

The intermediate report standing thus, the board's findings and order based upon it should and will be enforced.